Argued and submitted July 21, affirmed October 18, 1995, petition for review denied March 19, 1996 (323 Or 74)

STATE OF OREGON,
*Respondent,*

*v.*

WILLIAM R. BOWEN,
*Appellant.*

(94-01-30403; CA A84335)

904 P2d 1076

Peter Gartlan, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

David Thompson, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

De MUNIZ, J.

## De MUNIZ, J.

Defendant appeals from convictions for manufacture, delivery and possession of a controlled substance. ORS 475.992. He assigns as error the denial of his motion to suppress, contending that the warrantless search of his home was unlawful. We affirm.

■■ We recite the evidence consistently with the findings of the trial court. We are bound by the trial court's findings if supported by evidence in the record. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). On the afternoon of January 7, 1994, Officer Cordell arrested defendant on a Portland street pursuant to an outstanding DUII warrant. Three more officers then arrived. After handcuffing defendant and giving him *Miranda* warnings, Cordell told defendant that he was suspected of growing marijuana in his home and asked for consent to seize the plants. Defendant told Cordell to get a warrant. Cordell said he could either get defendant's consent or get a search warrant.[1] Defendant refused to consent, and the officers drove him in a patrol car to his house two blocks away.

While defendant remained in the car, Cordell and another officer entered defendant's living room at the invitation of Stitzel, defendant's housemate. The plants and grow materials were out of view in a back bedroom. Cordell told Stitzel that defendant was suspected of growing marijuana somewhere in the house, and asked for permission to seize the plants. Stitzel said the officers would need a warrant. As with defendant, Cordell told Stitzel that he could either consent or they would post an officer outside and get a search warrant. Stitzel insisted on a warrant, and the officers went outside to their patrol cars.

---

[1] Defendant testified at the suppression hearing that Cordell said he could *get* a warrant, while Cordell testified that he said he could *apply* for one. The trial court found:

"I think it's more likely that the officers said they would get a search warrant than they would apply for one, but I don't find any great distinction in that."

We believe that the trial court found that Cordell said he could "get" a warrant. Because the record supports this finding, it is binding. *Ball*, 250 Or at 487.

Before he was driven to jail, defendant said, "He can get the plants." When Cordell asked what he meant, defendant asked to speak with Stitzel. One of the officers told Stitzel that defendant had consented and wished to speak to him. After talking to defendant, Stitzel said he would get the plants. When Officer Ober asked, "Can I go with you," Stitzel said "yes," and guided him to the plants and other paraphernalia in the back bedroom.

The trial court denied defendant's motion to suppress, ruling that, under the totality of the circumstances, Stitzel voluntarily consented because the police neither coerced nor deceived him. On appeal, defendant challenges the validity of both his and Stitzel's purported consents under Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution. The trial court did not rule on defendant's consent. Because we agree that Stitzel validly consented, we also do not address the validity of defendant's consent.

Defendant contends that Stitzel's consent was involuntary under the totality of circumstances, because after Stitzel initially refused consent, Cordell gave Stitzel *Miranda* warnings and threatened to post an officer outside while he got a warrant. Defendant argues that, because there was insufficient probable cause to issue a warrant,[2] the officer threatened to do something the law would not allow. *See State v. Douglas*, 260 Or 60, 81, 488 P2d 1366, *cert den* 406 US 974 (1971) (O'Connell, C. J., dissenting). Additionally, defendant argues that Stitzel was deceived because the other officer told him that defendant had consented when he had not. Citing *Bumper v. North Carolina*, 391 US 543, 88 S Ct 1788, 20 L Ed 2d 797 (1968), defendant argues that, because Stitzel relied on this misrepresentation, he did not consent but merely acquiesced to a false claim of authority.

Warrantless searches are valid under Article I, section 9, and the Fourth Amendment if they fall under a recognized exception to the warrant requirement, such as consent. *State v. Paulson*, 313 Or 346, 351, 833 P2d 1278

---

[2] Defendant argues that his high electric bills alone do not provide probable cause and that the state offered no evidence of the reliability, quality or basis of informant accusations. We do not address whether there was probable cause because our analysis does not turn on whether the officers could have obtained a warrant.

(1992); *State v. Bea*, 318 Or 222, 231, 864 P2d 854 (1993). When the state seeks to justify a search based on consent, it must show that someone with authority to consent voluntarily did so. *Paulson*, 313 Or at 352; *Bea*, 318 Or at 231. Under Article I, section 9, we are not bound by the trial court's legal conclusion of voluntariness, and instead "assess anew whether the facts suffice to meet constitutional standards." *State v. Stevens*, 311 Or 119, 135, 806 P2d 92 (1991); *see also State v. Warner*, 284 Or 147, 156-58, 585 P2d 681 (1978). Under the Fourth Amendment, voluntariness of consent is a question of fact, and we will not disturb the trial court's finding unless it is unsupported by the record or clearly erroneous. *Schneckloth v. Bustamonte*, 412 US 218, 227, 248, 93 S Ct 2041, 36 L Ed 2d 854 (1973); *Bea*, 318 Or at 231.

■ ■   Under state law, consent is not involuntary simply because police threaten " 'to do what the law permits them to do.' " *State v. Williamson*, 307 Or 621, 627, 772 P2d 404 (1989) (Carson J., concurring, quoting *Douglas*, 260 Or at 81) (officer's threat to "detain" defendant's truck unless defendant consented rendered consent invalid because the officer could not lawfully detain the truck). An officer's threat to obtain a warrant, however, is but one factor in determining whether a person voluntarily consented. *State v. Greason*, 106 Or App 529, 535, 809 P2d 695, *rev den* 311 Or 643 (1991). Voluntariness of consent under *Douglas* does not turn on the officer's actual ability to obtain a warrant, but rather is determined under the totality of circumstances. *Greason*, 106 Or App at 535; *State v. Roy*, 28 Or App 861, 864 n 3, 562 P2d 213 (1977).

In *Douglas*, the police told the defendant that they would "apply for" a warrant if he refused to consent. *Douglas*, 260 Or at 78. Although the court doubted that an ordinary person could distinguish "get a warrant" from "apply for a warrant," the threat was not controlling because the defendant's brother-in-law, not the police, ultimately caused the defendant to consent. *Id.* at 79.

■   The situation here is analogous to that in *Douglas*. Stitzel testified that he allowed the police inside because he was "under the impression that defendant had consented." Therefore, under the totality of the circumstances, Cordell's

threat to obtain a warrant is not controlling because, as in *Douglas*, the record reveals that Stitzel consented for reasons independent of that threat. Cordell's threat to get a warrant, lawful or not, did not affect Stitzel's decision.

Defendant nonetheless contends that, because the other officer falsely stated that defendant had consented, the officer effectively told Stitzel that he had no choice whether a search would occur. The record, however, does not support defendant's claim.

After defendant said, "He can get the plants," Stitzel talked with defendant at the patrol car. Stitzel then said that he would bring the plants out, and guided Ober inside. Both defendant and Stitzel testified that they did not discuss defendant's change of mind at the car. The trial court, however, found that testimony "not worthy of belief" and refused to accept that "there was no mention of [defendant consenting] during the discussion."

■ The trial court also found that, immediately after their conversation, Stitzel believed that defendant had consented, but the court did not make findings as to why Stitzel believed that. When the court fails to make material findings, we presume that the facts were decided in a manner consistent with the ultimate conclusion, if supported by the record. *Ball*, 250 Or at 487. Based on the above findings and credibility assessments, we conclude that the trial court implicitly found as fact that Stitzel believed defendant had consented because of his conversation with defendant, and not because of what the officer said.

The trial court correctly concluded that Stitzel's consent was voluntary because, under the totality of the circumstances, nothing the police did materially affected his decision. We therefore hold under Article I, section 9, that Stitzel validly consented to Ober's entry. Because voluntariness of consent is a question of fact under the federal constitution, and the record supports the trial court's finding of voluntariness, we hold that Stitzel also validly consented under the Fourth Amendment.[3]

Affirmed.

---

[3] *Bea*, 318 Or at 231.