Submitted January 17, 2013, affirmed January 23, petition for review denied May 29, 2014 (355 Or 568)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JON DOUGLAS WIEBOLDT,
*Defendant-Appellant.*

Lincoln County Circuit Court
091147; A146806

320 P3d 597

Peter Gartlan, Chief Defender, and Kristin A. Carveth, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, Anna M. Joyce, Solicitor General, and Shannon T. Reel, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Nakamoto, Judge, and De Muniz, Senior Judge.

ORTEGA, P. J.

### ORTEGA, P. J.

Defendant, who was convicted of driving under the influence of intoxicants (DUII), ORS 813.010, appeals the judgment of conviction, contending that the trial court erred in denying his motion to suppress the results of his urinalysis because his consent to take the test was not valid and exigent circumstances did not otherwise justify the warrantless seizure and search of his urine. We affirm, concluding that, in light of the Supreme Court's holding in *State v. Moore*, 354 Or 493, 318 P3d 1133 (2013), defendant voluntarily consented to the seizure and search of his urine even though he consented after he had received the statutory implied consent warnings required by ORS 813.100(1), ORS 813.130, ORS 813.131, and ORS 813.132 about the economic harm and loss of privileges that would result if he refused.

The relevant facts are undisputed. Officer Sites, responding to a citizen complaint that defendant was driving and "highly intoxicated," located defendant in his car in a parking lot. Defendant informed Sites that he had just been released from the hospital and was taking pain killers and muscle relaxants. Defendant had difficulty maintaining his balance, his eyes were watery, and his speech was slurred. Sites arrested defendant after he failed field sobriety tests and, upon arriving at the county jail, Sites advised defendant of his rights under Oregon's implied consent law and the adverse consequences of refusing to submit to a breath test, blood test, or urine test by reading "Section I" of the "rights and consequences" section of the "implied consent form" prepared by the Driver and Motor Vehicle Services Division (DMV) of the Oregon Department of Transportation.[1] Of particular importance to this case, the warnings given by Sites informed defendant that if he refused to submit to a test, (1) "evidence of the refusal * * * may be offered against you," (2) his license would be immediately suspended and he would be subject to a suspension

---

[1] *See* ORS 813.100(1) (requiring that, before a test is administered "the person requested to take the test shall be informed of consequences and rights as described under ORS 813.130"); ORS 813.130 (setting out the information "about rights and consequences" that must be divulged to the person); ORS 813.131 (establishing implied consent to take a urine test in certain circumstances); ORS 813.132 (setting out consequences of refusing to take a urine test and information that must be disclosed to the person before a urine test is administered).

that is "substantially longer" than the suspension for failing the test, and (3) he would be "subject to a fine of at least $500 but no more than $1,000." Defendant agreed to submit to a breath test, which exhibited a blood alcohol content (BAC) of 0.0 percent. Deputy Boys, a Drug Recognition Evaluator, evaluated defendant and concluded that he was impaired from a narcotic analgesic and a central nervous system depressant. Sites read "Section II" of the implied consent form, which includes additional statements of the rights and consequences related to the refusal to submit to a urine test. Defendant agreed to provide a urine sample. Defendant's urine sample contained hydromorphone—a Schedule II controlled substance.

The trial court denied defendant's motion to suppress the results of his urinalysis, and defendant was subsequently convicted of DUII after a jury trial. Defendant appeals, contending that his consent to provide a urine sample was involuntary and that the state failed to demonstrate that exigent circumstances justified the warrantless seizure and search because it "presented no evidence concerning the rate at which the controlled substance at issue is eliminated from the body." We need not decide if exigent circumstances justified the warrantless seizure and search because we conclude that defendant consented to the seizure and search of his urine.

On appeal, defendant relies on our decision in *State v. Machuca*, 231 Or App 232, 218 P3d 145 (2009) (*Machuca I*), *rev'd on other grounds*, 347 Or 644, 227 P3d 729 (2010) (*Machuca II*), to advance his argument that he did not voluntarily consent to provide a urine sample. In *Machuca I*, we reversed the trial court's denial of the defendant's motion to suppress evidence of his BAC after he consented to a blood draw. 231 Or App at 245. We concluded that the defendant's consent was involuntary under Article I, section 9, of the Oregon Constitution[2] because the consent was procured through a threat of economic harm and loss of privileges. *Id.* at 240. That is, the defendant consented after receiving the statutory implied consent warnings under ORS 813.130(2)

---

[2] Article I, section 9, provides in part that "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure[.]"

about the consequences of refusing to submit to a blood test. *Id.* at 240-42 (relying on *State v. Newton*, 291 Or 788, 636 P2d 393 (1981), *overruled in part on other grounds by State v. Spencer*, 305 Or 59, 750 P2d 147 (1988)). We also rejected the state's argument that exigent circumstances authorized the warrantless seizure and search of the defendant's blood because the state failed to prove that a warrant could not have been obtained within a reasonable time to secure the evidence. *Id.* at 246-47.

The Supreme Court reversed *Machuca I*, concluding that exigent circumstances authorized the blood draw without a warrant. *Machuca II*, 347 Or at 657. In doing so, the Supreme Court did not address our analysis of the voluntariness of the defendant's consent to the blood test. In *State v. Moore*, 247 Or App 39, 46, 269 P3d 72 (2011) (*Moore I*), *rev'd*, 354 Or 493, 318 P3d 1133 (2013) (*Moore II*), we adhered to, and readopted our reasoning in *Machuca I* that consent obtained after the defendant has received the statutory implied consent warnings is involuntary.

As noted, on appeal, defendant relies on *Machuca I* to support his argument that the statutory implied consent warnings are coercive as a whole. He specifically attacks the warnings related to economic harm and loss of privileges as particularly coercive. Defendant also argues that the warning that evidence of his refusal to submit to a test may be offered against him rendered his consent involuntary as a matter of law because that warning "threatened to punish defendant if he exercised his constitutional right to refuse the officer's request for a warrantless seizure and search of his urine." That is, defendant maintains that, in the absence of a warrant, he has the constitutional right to refuse to give a urine sample, and that the state may not use the assertion of that constitutional right as substantive evidence of his guilt. Accordingly, defendant asserts that providing him with the "constitutionally defective warning that his refusal to give a urine sample would be admissible at trial as evidence of his guilt rendered his subsequent decision to consent involuntary, as a matter of law."

During the pendency of this appeal, the Supreme Court decided *Moore II*, which controls the outcome of this

appeal. In *Moore II*, the court concluded that, contrary to our holding in *Machuca I*, an officer's reading of the statutory rights and consequences of refusing to submit to blood, breath, or urine tests does not render the defendant's consent involuntary. 354 Or at 503. The Supreme Court rejected the defendant's argument that the officer's reading of the statutory rights and consequences of refusing to submit to the tests was necessarily coercive—thus explicitly overruling our reasoning in *Machuca I. Id.* In doing so, the court concluded that advising a defendant of the "lawful consequences that may flow from his or her decision to engage in a certain behavior ensures that that defendant makes an informed choice whether to engage in that behavior or not." *Id.* at 502-03. Thus, the court concluded that a statement of the lawful consequences of refusal to submit to breath, blood, or urine tests is not unconstitutionally coercive.

The court also rejected the defendant's argument that the statutory implied consent warning that evidence of the defendant's refusal to submit to a test "may be offered against" him rendered his subsequent decision to consent involuntary. Just as defendant does in the instant case, the defendant in *Moore II* argued that the warning that refusal to submit to a test can be used against him as evidence of guilt is unlawful because he has the constitutional right to refuse to consent to a seizure of his bodily fluids under Article I, section 9, and as a matter of constitutional law, the assertion of a constitutional right may not be used as substantive evidence of guilt. In rejecting that argument, the Supreme Court placed particular significance on the text of the warning given under ORS 813.130(2)(a)—"If you refuse or fail a test, evidence of the refusal or failure may be offered against you." The court concluded that, given the nuanced and conditional terms of that warning, it was a true statement in that it "does not express or imply that evidence of his refusal will be used or can be used as substantive evidence against him in a criminal proceeding" and it "advises of a consequence that the constitution does not forbid in at least two situations[]"—it could be admissible in an administrative hearing relating to a suspension for refusing to submit to a test or in a proceeding to contest a traffic violation for refusing to consent to a chemical test. *Id.*

at 505-06. Accordingly, because it was a true statement and not constitutionally forbidden in at least two situations, the statement that evidence of refusal "may be offered against you" was not coercive. *Id.* at 506.

The determinative facts and the legal arguments and analysis in *Moore II* and this case are essentially the same. In both cases, an officer read the statutory rights and consequences from DMV's implied consent form to persons who were under arrest for DUII. Both persons agreed to submit to the tests. Defendant's arguments in this case mimic the arguments that the Supreme Court rejected in *Moore II*. Accordingly, given the Supreme Court's decision in *Moore II*, we affirm the trial court's denial of defendant's motion to suppress.

Affirmed.