STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

JESSE JAMES MOORE,
*Defendant-Respondent.*

Tillamook County Circuit Court
091131; A145081

336 P3d 507

John R. Kroger, Attorney General, Mary H. Williams, Solicitor General, and Timothy A. Sylwester, Senior Assistant Attorney General, filed the brief for appellant.

Peter Gartlan, Chief Defender, and Marc D. Brown, Deputy Public Defender, Office of Public Defense Services, filed the brief for respondent.

Before Armstrong, Presiding Judge, and Haselton, Chief Judge, and Duncan, Judge.

HASELTON, C. J.

## HASELTON, C. J.

This case is before us on remand from the Supreme Court with instructions that we consider defendant's two alternative bases for affirmance, which we had not previously reached or resolved. *State v. Moore*, 247 Or App 39, 269 P3d 72 (2011) (*Moore I*), *rev'd*, 354 Or 493, 318 P3d 1133 (2013) (*Moore II*), *adh'd to as modified on recons*, 354 Or 835, 322 P3d 486 (2014). For the reasons that follow, we conclude that defendant's alternative contentions are unavailing. Accordingly, we reverse and remand.

We briefly summarize the contextual facts and procedure in this case, taking the following statement of facts from *Moore II*:

"On September 12, 2008, Oregon State Trooper Farrar witnessed an accident while driving southbound on Highway 101 in Tillamook County. He observed defendant drift over the center line and collide head-on with another vehicle. The collision injured defendant and killed a woman in the other vehicle. A few minutes later, Farrar conducted a brief interview with defendant at the scene of the collision, while defendant was receiving medical treatment before being transported to the hospital. During that conversation, after noticing that defendant was dazed and his speech was slow, Farrar began to suspect that defendant had been driving under the influence of intoxicants.

"An hour or two later, Farrar went to the hospital and again interviewed defendant as he recovered in the emergency room. By that time, Farrar believed that he had probable cause to arrest defendant for DUII. Farrar provided defendant *Miranda* warnings and also advised him of his rights under Oregon's implied consent law and the adverse consequences of refusing to provide samples of his breath, blood, or urine. He did so by reading the warnings set out on an 'implied consent' form prepared by the Driver and Motor Vehicle (DMV) Services Division of the Oregon Department of Transportation. That form generally tracks the statutorily required warnings of ORS 813.130 ***. Farrar then asked defendant to consent to provide a sample of his blood and urine. Defendant orally consented, stating, 'Of course,' and provided the requested samples. Those samples apparently disclosed the presence of controlled substances.

"As noted, defendant was charged with criminally negligent homicide. Before trial, defendant moved to suppress evidence obtained through the warrantless seizure of his blood and urine, arguing that no exigent circumstances existed to justify the warrantless search and that his consent was coerced and not voluntary. The trial court granted the motion. The trial court found that there was no evidence in the record concerning the evanescent nature of drugs in defendant's system that might require his blood or urine to be tested promptly. There also was no evidence that Farrar could not have expeditiously obtained a warrant. For those reasons, the court ruled that the state had failed to prove that exigent circumstances existed to justify the warrantless seizure of defendant's blood and urine. The trial court then considered whether defendant's consent to the seizure of his blood and urine was voluntary. The court noted that, apart from the fact that Farrar had read defendant the statutorily required warnings of the consequences of refusing to submit to blood and urine tests, there was no indication that defendant's consent had been coerced. Accordingly, the trial court stated:

"'Absent the effect of the implied consent warnings, the Court would find that the Defendant's consent to the blood draw was given voluntarily.'"

354 Or at 495-97 (footnotes omitted).

The state appealed, raising the narrow issue of whether the implied consent warning that the officer read to defendant "was sufficient of itself to invalidate defendant's otherwise voluntary consent to provide blood and urine samples and hence to require suppression of those samples and test results." Specifically, in that regard, the state contended that we should revisit and repudiate the reasoning of the en banc majority opinion in *State v. Machuca*, 231 Or App 232, 218 P3d 145 (2009) (*Machuca I*), *rev'd on other grounds*, 347 Or 644, 227 P3d 729 (2010) (*Machuca II*), on which the trial court had relied.

In response, defendant argued that (1) the statutory implied consent warnings are coercive as a matter of law and, thus, receipt of those warnings rendered defendant's consent involuntary; (2) "[i]n the alternative, ORS 813.100 does not apply because the officer's belief that he had probable cause to arrest defendant for [DUII] was not objectively

reasonable"; and (3) "[d]efendant did not voluntarily consent to the search because he had received pain medication prior to being asked to give consent."

Adhering to our analysis in *Machuca I*, we upheld the trial court's suppression order, concluding that defendant's consent to blood and urine testing was involuntary because it was obtained after he had received constitutionally infirm statutory implied consent warnings. *Moore I*, 247 Or App at 46-47.

On review, the Supreme Court concluded that "defendant's consent was voluntary; the police officer did not unconstitutionally coerce defendant's consent to the test of his blood and urine by reading him the statutory implied consent warnings." *Moore II*, 354 Or at 495. The court initially reversed our decision and the trial court's order. However, on defendant's petition for reconsideration, the Supreme Court remanded the case to us to consider two alternative bases for affirmance that defendant had raised, but that we had declined to address in *Moore I—viz.*, "(1) that 'ORS 813.100 does not apply because the officer's belief that he had probable cause to arrest defendant for driving under the influence of a controlled substance was not objectively reasonable' and (2) that '[d]efendant did not voluntarily consent to the search because he had received pain medication prior to being asked to give consent.'" *Moore I*, 247 Or App at 47 n 4.

For analytic coherence, we address defendant's second contention—which relates to the voluntariness and, hence, the validity, of defendant's consent—first. The voluntariness of consent to search is a matter of law; accordingly, in reviewing a trial court's determination of voluntariness, we first assess whether the trial court's predicate findings of historical fact are supported by any evidence and then determine whether those facts suffice, as a matter of law, to establish voluntariness. *State v. Stevens*, 311 Or 119, 135, 806 P2d 92 (1991). In assessing voluntariness, we examine the totality of the circumstances to determine whether a defendant's consent was the product of the defendant's free will or was the result of express or implied coercion. *State v. Parker*, 317 Or 225, 230, 855 P2d 636 (1993); *Stevens*, 311 Or at 135.

"Drug use may be a relevant factor in determining whether consent is voluntary if it impairs a defendant's capacity to make a knowing, voluntary and intelligent choice. Drug use, however, is not determinative." *State v. Larson*, 141 Or App 186, 198, 917 P2d 519, *rev den*, 324 Or 229 (1996) (citation omitted).

Defendant contends that his consent was not voluntary because, when he consented, he was under the influence of pain medication and "that medication impaired his ability to make a knowing, voluntary, and intelligent choice to consent to the blood draw." In so arguing, defendant challenges the trial court's predicate findings that,

"[w]hile the defendant was impaired to some extent by drugs, whether administered at the hospital or before or both, he was able to answer all forty plus questions on the alcohol influence report form appropriately. The police/suspect interaction was not confrontational or antagonistic."

The trial court's finding that defendant was not materially impaired by pain medication is supported by evidence in the record, and, in the wake of *Moore II*'s rejection of his contention as to the allegedly coercive effect of the implied-consent warnings, defendant identifies no other circumstance that purportedly impermissibly affected his autonomy. Accordingly, we conclude that defendant's consent to the blood draw was voluntary.

We proceed to defendant's remaining appellate contention, *viz.*, that ORS 813.100(1) was inapposite because police lacked probable cause to arrest defendant for DUII. Defendant's reasoning in that regard is, frankly, unclear. However, insofar as we can discern, defendant may be advancing either, or both, of two arguments, neither of which is availing.

First, defendant may be suggesting that, in this context, defendant's *actual* consent was somehow *constitutionally* inadequate by itself to support a warrantless search—and, instead, consent must be coupled with probable cause. Defendant identifies no constitutional principle as to why that should be so—that is, as to why consent, which

operates as an independently sufficient exception to the warrant requirement in every other context, would not, or should not, here.

Second, defendant appears to posit that, as a *statutory* matter, probable cause was a prerequisite to Farrar's request for defendant's consent to the blood draw. In that regard, defendant relies on ORS 813.100(1), which provides:

> "Any person who operates a motor vehicle upon premises open to the public or the highways of this state shall be deemed to have given consent, subject to the implied consent law, to a chemical test of the person's breath, or of the person's blood if the person is receiving medical care in a health care facility immediately after a motor vehicle accident, for the purpose of determining the alcoholic content of the person's blood if the person is arrested for driving a motor vehicle while under the influence of intoxicants in violation of ORS 813.010 or of a municipal ordinance. A test shall be administered *upon the request of a police officer having reasonable grounds to believe the person arrested to have been driving while under the influence of intoxicants* in violation of ORS 813.010 or of a municipal ordinance. Before the test is administered the person requested to take the test shall be informed of consequences and rights as described under ORS 813.130."

(Emphasis added.)

Defendant seems to argue that, because Farrar informed defendant of the "consequences and rights as described under ORS 813.130"—and did not simply ask for his consent to a blood draw—such a request could not properly be made unless Farrar had "reasonable grounds" to believe that he had committed DUII. Defendant further contends that statutory "reasonable grounds" equates to constitutional probable cause and, thus, an officer must have probable cause for DUII before requesting blood and urine samples under the implied consent law.

We need not, and do not, engage with the ostensible premises of defendant's contention, including its equation of "reasonable grounds" for purposes of ORS 813.100(1) with probable cause. That is so because, even assuming, without deciding, the validity of those premises, they would

establish, at most, a statutory violation of the sort inadequate to permit suppression. ORS 136.432.[1] ORS 136.432 provides:

"A court may not exclude relevant and otherwise admissible evidence in a criminal action on the grounds that it was obtained in violation of any statutory provision unless exclusion of the evidence is required by:

"(1) The United States Constitution or the Oregon Constitution;

"(2) The rules of evidence governing privileges and the admission of hearsay; or

"(3) The rights of the press."

Defendant offers no reason why that limitation on suppression is not dispositive here, and we perceive none.

We reject defendant's proffered alternative bases for affirmance. Accordingly, we reverse the trial court's suppression order and remand the case for further proceedings.

Reversed and remanded.

---

[1] *See State v. Rodgers/Kirkeby*, 347 Or 610, 621, 227 P3d 695 (2010) ("ORS 136.432 prohibits the judicial branch from excluding evidence obtained by government conduct that exceeds statutory authority."); *State v. Silbernagel*, 229 Or App 688, 690, 215 P3d 876 (2009) ("We need not consider whether the arresting officer in this case violated the implied consent laws, because, even assuming that he did, we agree with the state that ORS 136.432 precludes suppression of the evidence.").