Argued and submitted December 12, 2011, reversed and remanded May 31, 2012

STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

KIM RAE McMULLEN,
*Defendant-Respondent.*

Washington County Circuit Court
D092959T; A144727

279 P3d 367

Jennifer S. Lloyd, Attorney-in-Charge, Criminal Appeals, argued the cause for appellant. On the brief were John R. Kroger, Attorney General, Mary H. Williams, Solicitor General, and Joanna L. Jenkins, Assistant Attorney General.

David J. Celuch argued the cause and filed the brief for respondent.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

SCHUMAN, P. J.

**SCHUMAN, P. J.**

In this driving under the influence of intoxicants (DUII) case, the state appeals a pretrial order suppressing the results of a urine test, obtained without a warrant, disclosing that defendant had ingested a variety of controlled substances. *See* ORS 138.060(1)(c) (state may appeal pretrial order suppressing evidence). The state argued that the evidence was admissible despite the absence of a warrant for three reasons: because defendant consented to the test, because exigent circumstances made obtaining a warrant impracticable, and because the test occurred incident to a lawful arrest. The trial court, relying primarily on this court's opinion in *State v. Machuca*, 231 Or App 232, 218 P3d 145 (2009) (*Machuca I*), *rev'd on other grounds*, 347 Or 644, 227 P3d 729 (2010) (*Machuca II*), rejected the state's arguments. We hold that, contrary to the trial court's decision, the evidence is admissible under the exigent circumstances exception to the warrant requirement. We therefore reverse and remand for further proceedings.

The relevant facts are few and undisputed. A state trooper lawfully stopped defendant for a traffic violation at approximately midnight on June 1, 2009. After conversing with and observing her, the trooper developed probable cause to believe that she had been driving under the influence of a controlled substance, and he arrested her for that offense. After dealing with a passenger in defendant's car who was ultimately arrested, the trooper took defendant to the nearby police station. They arrived at approximately 1:15 a.m. Before administering a breath test, the trooper read defendant material from an "informed consent" form, including the parts that explained the consequences of refusing to submit to a breath test, and asked defendant if she wanted to speak privately to a lawyer. She declined that invitation and took the test; it showed a blood alcohol content of zero. Because the trooper had probable cause to believe that defendant was under the influence of some other intoxicant, he decided to obtain a urine sample, and he read to defendant from another part of the implied consent form explaining the consequences of refusing that procedure. *See* ORS 813.131(1)(a) (driver impliedly consents to urine test if results of breath test show

less than 0.08 percent blood alcohol); ORS 813.132 (consequences of refusal to take urine test include loss of driving privileges and a fine). Defendant then availed herself of the opportunity to make a private phone call—the record does not disclose to whom—and consented to take the urine test. At around 2:00 a.m., two hours after her arrest, she provided the necessary sample. Toxicology testing later disclosed evidence of several controlled substances including "ecstasy" (MDMA), cocaine, morphine, and Oxycodone.

Defendant was charged with DUII and reckless driving. Approximately three months later, before her case came on for trial, this court decided *Machuca I*. In that case, we held that the DUII defendant's consent to undergo a blood test was involuntary because, among other factors, the defendant consented only after having been warned of punitive and economic consequences if she refused. *Machuca I*, 231 Or App at 237-42, 245. We also rejected the state's argument that exigent circumstances justified the warrantless test, that is, the argument that alcohol dissipates in blood over time so that delaying the blood test while obtaining a warrant would result in the destruction of evidence. *Id*. at 245-47. We held that, because the evidence showed that the police could have obtained a warrant in less time than "the actual time that elapsed between when [the arresting officer] developed probable cause and when the blood was extracted," the warrant requirement was not excused by exigent circumstances; "[t]he requirement to obtain a warrant is not excused by the mere fact that alcohol dissipates in the bloodstream over time." *Id*. at 247.

At the pretrial hearing in the present case, defendant moved to suppress evidence of the urine test. Citing *Machuca I*, she argued that the consent exception to the warrant requirement did not apply; her consent, like the defendant's in *Machuca I*, was involuntary because she gave it under threat of adverse consequences if she were to refuse. She also argued that there was no exigency to justify the "exigent circumstances" exception because, in the time that elapsed between the officer's development of probable cause and the urine test, the trooper could have obtained a warrant. In response, the state argued that, with respect to the voluntariness of consent, *Machuca I* was wrongly decided;

that, even under *Machuca I*, exigent circumstances excused the lack of a warrant; and that the search was lawful because it was incident to a lawful arrest. As relevant to this appeal, the state adduced undisputed evidence of the following facts: (1) After ingestion, controlled substances enter the blood-stream and immediately begin to be eliminated—that is, passed into the bladder. (2) The rate of transfer from the bloodstream to the bladder varies from person to person. (3) Drugs pass from the blood into the bladder either in an unchanged form, or changed into identifiable metabolites. (4) One controlled substance, cocaine, enters the bladder unchanged only in very small amounts. (5) Although the metabolites of cocaine and other controlled substances will remain in the bladder for at least two days, cocaine itself remains detectable in urine for, on average, six hours, but it can become undetectable in as few as two hours. (6) The "best practice" in collecting urine samples is "[t]he sooner the bet-ter. * * * Statistically you're going to have a better chance of having negative urine the further away you go from the time of ingestion." (7) An average amount of time required to obtain a search warrant in Washington County is five hours, but the process can take as long as a day.

The court ruled in favor of defendant. The court explained that the trooper's request that defendant produce a urine sample had "the same coercive components" that were present in *Machuca I* and, for that reason, the consent was not voluntary. With respect to "exigent circumstances," the court explained, again relying on *Machuca I*,

> "the main thing and the most important thing is that there has to be exigency in the sense that by delaying and not seeking the warrant—well, that there wasn't a need to seek a warrant because the evidence of the crime would dissi-pate. And based upon this record and this evidence that's presented to the Court, the Court cannot make that finding."

According to the court, some evidence of a controlled sub-stance would be in the urine for at least five hours, and, dur-ing that time, the police could have "sought and basically received" a warrant.

Between the order suppressing the results of the urine test and the briefing of this case, the Supreme Court issued *Machuca II,* partially reversing *Machuca I.* The court expressly declined to address the defendant's argument and this court's decision that the defendant's consent was coerced. *Machuca II,* 347 Or at 657. Instead, the court focused on that part of *Machuca I* dealing with exigent circumstances. In particular, the court rejected the proposition that, in order to establish exigency in taking a warrantless blood sample, the state has to prove that it could not have obtained a search warrant without sacrificing the evidence. *Id.* at 656. The court held:

> "[W]hen probable cause to arrest for a crime involving the blood alcohol content of the suspect is combined with the undisputed evanescent nature of alcohol in the blood, those facts are a sufficient basis to conclude that a warrant could not have been obtained without sacrificing that evidence.

> "It may be true, phenomenologically, that, among such cases, there will be instances in which a warrant could have been both obtained and executed in a timely fashion. The mere possibility, however, that such situations may occur from time to time does not justify ignoring the inescapable fact that, in every such case, evidence is disappearing and minutes count. We therefore declare that, for purposes of the Oregon Constitution, the evanescent nature of a suspect's blood alcohol content is an exigent circumstance that will ordinarily permit a warrantless blood draw of the kind taken here. We do so, however, understanding that particular facts may show, in the rare case, that a warrant could have been obtained and executed *significantly* faster than the actual process otherwise used under the circumstances. We anticipate that only in those rare cases will a warrantless blood draw be unconstitutional."

*Id.* at 656-57.

In deciding this case, we apply the law as it currently exists, *State v. Jury,* 185 Or App 132, 136, 57 P3d 970 (2002), *rev den,* 335 Or 504 (2003), that is, in light of *Machuca II.* The state's first argument on appeal is that, contrary to our holding in *Machuca I*—a holding the Supreme Court has not disturbed—the test results were admissible because no coercion

occurs when, as here, a police officer's "threats" consist solely of reciting the lawful consequences of an action; our opinion to the contrary in *Machuca I* was wrong and should be overruled. We rejected an identical argument in *State v. Moore*, 247 Or App 39, 269 P3d 72 (2011), *rev allowed*, 352 Or 25 (2012), and we do so again.

However, the state's second argument—that the warrantless test was justified by the "exigent circumstances" exception to the warrant requirement—is correct. In light of *Machuca II*, the trial court's ruling that no exigency existed because the police could have obtained a warrant in the time it took them to process defendant and collect the urine sample, cannot stand. Except in "rare cases"—and there is nothing in the record to indicate that this is one—the state needed to establish only the "evanescent nature" of a controlled substance in defendant's urine. 347 Or at 657. Defendant argues that the state did not establish that fact, pointing to the prosecution expert's testimony that, "once [a drug is] in the urine, it's a pretty stable matrix. Some drugs do continue to change in the urine, but not too fast."[1] According to defendant, there is no evidence establishing which drugs continue to change, whether the police had probable cause to believe that one such drug was in defendant's urine, or whether that drug changes so slowly that this could be considered the "rare case" where obtaining a warrant would be required.

We are not persuaded. Once police have probable cause to believe that evidence of a controlled substance will be in a suspect's urine—a condition to which defendant here stipulated—the exact identity of the substance is of no consequence in determining whether exigent circumstances exist. That is so because we cannot reasonably expect police officers, even drug recognition experts, to be able to determine which controlled substance, alone or in combination, is causing a person to act in such a way as to indicate intoxication. We conclude that, because the trooper in this case had probable cause to believe that a controlled substance other than alcohol would be present in defendant's urine, and the

---

[1] The expert went on to testify that whether a drug is detectible in the urine depends on a person's hydration level and, of course, on whether the person has emptied his or her bladder.

evidence establishes that at least one controlled substance—cocaine—continues to change in urine, exigency normally exists. The nature of the change is significant. As the expert testified, the parent drug, cocaine itself, begins to change into cocaine metabolites as soon as two hours after ingestion. Thus, the presence of cocaine itself in the urine indicates a more recent ingestion than the presence of cocaine metabolites. For that reason, the presence of cocaine itself in the urine is evidence that is relevant to the question of when a defendant ingested the drug, and therefore relevant, along with other evidence, to the question of whether a defendant was under the influence of the intoxicant while driving. That is evidence that can disappear or significantly diminish quickly; therefore, exigent circumstances exist so as to justify obtaining a urine sample without a warrant. The court erred in concluding that there were no exigent circumstances to justify the warrantless urine test.[2]

Reversed and remanded.

---

[2] That conclusion obviates the need to address the state's argument that the sample was lawfully obtained incident to a lawful arrest.