Argued and submitted June 7, reversed and remanded September 12, 2012

## STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

## EDWARD J. FULLER,
*Defendant-Respondent.*

Yamhill County Circuit Court
CV090511; A147286

287 P3d 1147

Joanna L. Jenkins, Assistant Attorney General, argued the cause for appellant. With her on the opening brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General. With her on the reply brief were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

Rankin Johnson, IV, argued the cause and filed the brief for respondent.

Before Armstrong, Presiding Judge, and Brewer, Judge, and Duncan, Judge.

BREWER, J.

## BREWER, J.

In this driving under the influence of intoxicants (DUII) case, the state appeals a pretrial order suppressing the results of a urine test, obtained without a warrant, disclosing that defendant had ingested a variety of controlled substances. *See* ORS 138.060(1)(c) (state may appeal pretrial order suppressing evidence). The trial court suppressed that evidence, relying on this court's decision in *State v. Machuca*, 231 Or App 232, 218 P3d 145 (2009) (*Machuca I*), *rev'd on other grounds*, 347 Or 654, 227 P3d 729 (2010) (*Machuca II*). Applying the Supreme Court's partially overriding analysis in *Machuca II*, the trial court also rejected the state's argument that the warrantless seizure of defendant's urine was justified under the exigent circumstances exception to the warrant requirement of Article I, section 9, of the Oregon Constitution.[1] We reverse and remand.

We take the facts from the trial court's letter opinion. At 5:34 p.m. on October 28, 2009, Officer Christensen responded to a call regarding a hit and run crash at a grocery store. Witnesses had reported that a truck crashed into a parked car and then left the scene. While Christensen was en route to the store, two other officers went to the address of the registered owner of the truck. After viewing the damage to the parked car and talking to the witnesses, Christensen went to the address of the registered owner and met with defendant and the two officers. Defendant admitted that he had driven the truck to the grocery store, but denied that he had been involved in a crash.

During the interview, Christensen detected a moderate odor of alcohol emanating from defendant, and he noted that defendant seemed relaxed and that his movements were slow and lethargic. Defendant had trouble enunciating words, and he spoke slowly, with slurred speech,

---

[1] Article I, section 9, provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

and had bloodshot eyes. Defendant told Christensen that he had consumed two beers that afternoon, one at 2:00 and the other at 4:00. Defendant also told Christensen that he had taken an Oxycodone pill at 1:00 p.m.

From that interaction, Christensen concluded that he had probable cause to arrest defendant for DUII. Christensen asked defendant to perform voluntary field sobriety tests, and defendant agreed to do so. Defendant exhibited signs of impairment during each of the tests that Christensen administered. At 6:47 p.m., Christensen took defendant into custody for DUII, and, at 7:39 p.m., he began the observation period required before performing a Breathalyzer test. Christensen read defendant an "implied consent rights and consequences" statement, and defendant consented to the breath test at 8:00 p.m. The test indicated a blood-alcohol content of 0.0 percent.

After reviewing the results of the breath test, Christensen called for a drug recognition expert (DRE). That officer, Sergeant Weaver, arrived at 9:00 p.m. During the next 50 minutes, Weaver conducted the 12-step DRE protocol and noted that defendant exhibited signs of impairment. When asked, defendant again admitted that he had taken Oxycodone at 1:00 p.m. that day. From the first 10 steps of the DRE protocol, Weaver concluded that defendant was impaired by a central nervous system depressant and a narcotic analgesic. Weaver then asked defendant to consent to provide a urine sample for testing, which is the twelfth step of the DRE protocol. Weaver read defendant the "implied consent rights and consequences" statement, and defendant consented to give the sample. That sample later tested positive for Oxycodone.

After defendant was charged with DUII, he sought to suppress the urine sample, arguing that his consent had been unlawfully coerced under this court's decision in *Machuca I* and that the search had not been justified by the exigent circumstances exception to the warrant requirement as elaborated by the Supreme Court in *Machuca II*. The state disagreed, arguing that our holding regarding the effect of the implied consent rights and consequences statement in *Machuca I* was erroneous, but that, nevertheless, there had

been an exigency that justified the warrantless seizure of defendant's urine. The state argued that testimony from both the state's and defendant's experts at the suppression hearing regarding how controlled substances such as heroin and cocaine break down into metabolites in a person's urine established that exigency. Because the trial court's ruling relied on the holdings in *Machuca I* and *Machuca II*, it is useful to discuss those decisions at this point.

In *Machuca I*, we held that the DUII defendant's consent to undergo a blood test was involuntary because, among other factors, the defendant consented only after she had been warned of punitive and economic consequences if she refused. *Machuca I*, 231 Or App at 237-42. We also rejected the state's argument that exigent circumstances justified the warrantless seizure on the ground that alcohol dissipates in blood over time so that delaying the blood test while obtaining a warrant would result in the destruction of evidence. *Id.* at 245-47. We held that, because the evidence showed that the police could have obtained a warrant in less time than "the actual time that elapsed between when [the arresting officer] developed probable cause and when the blood was extracted," the warrant requirement was not excused by exigent circumstances. *Id.* at 247.

In *Machuca II*, the Supreme Court reversed in part *Machuca I*. In doing so, the court expressly declined to reexamine this court's decision that the defendant's consent had been coerced. *Machuca II*, 347 Or at 657. Instead, the court focused on that portion of *Machuca I* dealing with exigent circumstances. In particular, the court rejected the proposition that, in order to establish exigency for the purpose of taking a warrantless blood sample, the state must prove that it could not have obtained a search warrant without sacrificing the evidence. *Id.* at 656. The court held:

"[W]hen probable cause to arrest for a crime involving the blood alcohol content of the suspect is combined with the undisputed evanescent nature of alcohol in the blood, those facts are a sufficient basis to conclude that a warrant could not have been obtained without sacrificing that evidence. It may be true, phenomenologically, that, among such cases, there will be instances in which a warrant could have been both obtained and executed in a timely fashion. The mere

possibility, however, that such situations may occur from time to time does not justify ignoring the inescapable fact that, in every such case, evidence is disappearing and minutes count. We therefore declare that, for purposes of the Oregon Constitution, the evanescent nature of a suspect's blood alcohol content is an exigent circumstance that will ordinarily permit a warrantless blood draw of the kind taken here. We do so, however, understanding that particular facts may show, in the rare case, that a warrant could have been obtained and executed significantly faster than the actual process otherwise used under the circumstances. We anticipate that only in those rare cases will a warrantless blood draw be unconstitutional."

*Id.* at 656-57. (Emphasis omitted.)

Here, the trial court first rejected the state's argument that it should decline to follow *Machuca I* as it applied to the validity of defendant's consent to provide the urine sample. The court then agreed with defendant that there had been no exigency, explaining that, under *Machuca II,*

"[t]he state's evidence was insufficient to establish an exigency justifying the warrantless seizure of defendant's urine for constitutional purposes. *The evanescent quality of drugs in a person's body creates an exigency only if the evidence might disappear before police can obtain a warrant.* The testimony revealed that drugs can be detected in a suspect's urine for as long as 10-48 hours or more after ingestion.

"The court finds that the evidence of a CNS depressant and a narcotic analgesic can stay in the urine for a sufficient length of time and that the state did not meet its burden of proving the presence of exigent circumstances and that the law enforcement in this case could have and should have obtained a search warrant. The possibility of delay does not give rise to an exigency. If the police had attempted to obtain a warrant but had encountered difficulties in reaching a judge, this change in circumstances might well create an exigency justifying the warrantless seizure of a defendant's urine.

"There is one drug, Heroin, that has a very short life span before it changes to the morphine metabolite that can show up in the urine as the Heroin parent compound which is an

indication of recent use and is an indication of ingestion of Heroin versus Morphine. The fact of recent use is evidence for the state as it may be direct evidence of impairment. There is another drug, Ambien, which only shows the test result of the parent compound and is only detectable for up to 10 hours post ingestion. *If the officer were to have had specific evidence that the defendant ingested either Heroin or Ambien then the officer would need to collect that evidence quickly to avoid losing such evidence.*

"Therefore, there may be circumstances which create an exigency justifying the warrantless seizure of a defendant's urine. * * * Here, there was no evidence of such circumstances which created an exigency."

(Emphases added.) This appeal followed.

The state renews its arguments on appeal, contending that the evidence adduced at the suppression hearing regarding the transformation of controlled substances in a person's urine established an exigency that justified the warrantless seizure of defendant's urine.[2] The state maintains that this case is controlled by our recent decision in *State v. McMullen*, 250 Or App 208, 279 P3d 367 (2012), where we held that evidence of the transformation of controlled substances in a person's urine established an exigency justifying the warrantless seizure of the defendant's urine. The defendant in *McMullen* had consented to provide a urine sample after having been read an implied rights and consequences statement similar to the statement that we held was coercive in *Machuca I*. 250 Or App at 209.

Defendant remonstrates that the trial court correctly concluded that the evidence was insufficient to establish an exigency because the officers could have obtained a warrant before the controlled substances in defendant's urine transformed into undetectable metabolites. At oral argument, defendant argued that, if *McMullen* stands

---

[2] The state also urges us to reconsider our holding in *Machuca I* regarding the coercive effect of the implied consent rights and consequences statement. We decline to do so for the reasons set out in *State v. Moore*, 247 Or App 39, 269 P3d 72 (2011), *rev allowed*, 352 Or 25 (2012). The state also argues that defendant's urine was obtained as part of lawful search incident to his arrest. Because we conclude that the seizure of defendant's urine was justified under the exigent circumstances exception to the warrant requirement, we need not reach the state's alternative argument.

for the proposition that evidence of the transformation of controlled substances in urine always establishes an exigency, then *McMullen* was wrongly decided, and that, to the extent *McMullen* dealt with the admissibility of evidence of recent ingestion of controlled substances, the amount of time at issue in this case made it likely that any evidence in defendant's urine already would have dissipated. More fundamentally, defendant argues that, because the state failed to prove that it would have obtained the urine sample by means other than his unlawfully coerced consent, the state cannot rely on the exigent circumstances exception to justify the warrantless seizure of his urine. Defendant couches his argument in terms of "inevitable discovery," reasoning that, because his consent was unlawfully obtained, the state was required to prove that it would have obtained his urine by some other, lawful, means.

The threshold dispositive difficulty is that defendant did not make his "inevitable discovery" argument before the trial court and he does not assert on appeal that it constitutes an "alternative basis for affirmance."[3] As the Supreme Court explained in *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001), we may affirm the trial court, based on alternative arguments not made before it—the so-called "right for the wrong reason" doctrine—if we conclude:

> "(1) that the facts of record [are] sufficient to support the alternative basis for affirmance; (2) that the trial court's ruling [is] consistent with the view of the evidence under the alternative basis for affirmance; and (3) that the record materially [is] the same one that would have been developed had the prevailing party raised the alternative basis for affirmance below. In other words, even if the record contains evidence sufficient to support an alternative basis for affirmance, if the losing party might have created a different record below had the prevailing party raised that issue, and that record could affect the disposition of the issue, then we will not consider the alternative basis for affirmance."

---

[3] We express no view as to the merits of that argument.

(Emphasis omitted.) Under those precepts, we reject defendant's "inevitable discovery" argument. If defendant had made that argument before the trial court, the state might have adduced evidence regarding alternative methods of obtaining defendant's urine. Indeed, the state did adduce evidence from Weaver regarding the use of "catheter warrants," but it did so to establish an exigency by demonstrating the amount of time that it would take to obtain a search warrant. If the state had been aware of the argument that defendant now makes on appeal, it would have had an opportunity to establish the factual record that defendant now faults it for failing to make. Accordingly, we decline to consider that argument on appeal.

We turn, then, to defendant's argument that the trial court correctly found that there was no exigency because the officers could have obtained a warrant to seize defendant's urine before it transformed evidence of ingestion of controlled substances into undetectable metabolites. *McMullen* is instructive. There, a state trooper stopped the defendant for a traffic violation and, after talking with her, developed probable cause to believe that she had been driving under the influence of intoxicants. 250 Or App at 209. The trooper took the defendant to a nearby police station where, after hearing the implied rights and consequences statement, the defendant consented to a breath test. *Id.* The test showed a blood-alcohol content of zero. The trooper then asked the defendant to provide a urine sample, because the trooper had probable cause to believe that she was under the influence of some other kind of intoxicant. The trooper read the implied rights and consequences statement to the defendant, and the defendant consented to provide the sample. About two hours had elapsed after the defendant's arrest when she provided the sample. *Id.* at 210. The sample tested positive for several controlled substances, including ecstasy (MDMA), cocaine, morphine, and Oxycodone. *Id.*

The defendant moved to suppress evidence of the urine test. Citing *Machuca I*, she argued that the consent exception to the warrant requirement did not apply; her consent, like the defendant's consent in *Machuca I*, was involuntary because she gave it under threat of adverse consequences if she were to refuse. She also argued that there

was no basis to justify the "exigent circumstances" exception because, in the time that elapsed between the trooper's development of probable cause and the administration of the urine test, the trooper could have obtained a warrant. *Id.* at 211.

The trial court granted the defendant's motion to suppress the evidence, reasoning that "some evidence of a controlled substance would be in the urine for at least five hours, and, during that time, the police could have 'sought and basically received' a warrant." *Id.* The state appealed, and, after rejecting the state's invitation to reconsider our conclusion in *Machuca I* that the defendant's consent was unlawfully obtained, we held that the trial court had erred in finding that there was no exigency. As we explained,

> "[i]n light of *Machuca II*, the trial court's ruling that no exigency existed because the police could have obtained a warrant in the time it took them to process defendant and collect the urine sample, cannot stand. Except in 'rare cases'—and there is nothing in the record to indicate that this is one—the state needed to establish only the 'evanescent nature' of a controlled substance in defendant's urine. 347 Or at 657. Defendant argues that the state did not establish that fact, pointing to the prosecution expert's testimony that, 'once [a drug is] in the urine, it's a pretty stable matrix. Some drugs do continue to change in the urine, but not too fast.' According to defendant, there is no evidence establishing which drugs continue to change, whether the police had probable cause to believe that one such drug was in defendant's urine, or whether that drug changes so slowly that this could be considered the 'rare case' where obtaining a warrant would be required.
>
> "We are not persuaded. *Once police have probable cause to believe that evidence of a controlled substance will be in a suspect's urine—a condition to which defendant here stipulated—the exact identity of the substance is of no consequence in determining whether exigent circumstances exist.* That is so because we cannot reasonably expect police officers, even drug recognition experts, to be able to determine which controlled substance, alone or in combination, is causing a person to act in such a way as to indicate intoxication. *We conclude that, because the trooper in this case had probable cause to believe that a controlled substance other than alcohol would be present in*

*defendant's urine, and the evidence establishes that at least one controlled substance—cocaine—continues to change in urine, exigency normally exists.*

"The nature of the change is significant. As the expert testified, the parent drug, cocaine itself, begins to change into cocaine metabolites as soon as two hours after ingestion. Thus, the presence of cocaine itself in the urine indicates a more recent ingestion than the presence of cocaine metabolites. For that reason, the presence of cocaine itself in the urine is evidence that is relevant to the question of when a defendant ingested the drug, and therefore relevant, along with other evidence, to the question of whether a defendant was under the influence of the intoxicant while driving. That is evidence that can disappear or significantly diminish quickly; therefore, exigent circumstances exist so as to justify obtaining a urine sample without a warrant."

*Id.* at 213-14 (emphases added).

This case is not materially distinguishable from *McMullen.* Contrary to the trial court's reasoning, it is immaterial that the officers did not identify specific, rapidly dissipating controlled substances that they expected to find in defendant's urine. It is undisputed that the officers had probable cause to believe that evidence of a controlled substance would be found in defendant's urine and, as in *McMullen,* there was evidence that at least one controlled substance—in this case, heroin—continues to change in urine. Accordingly, we conclude, as we did in *McMullen,* that an exigency existed that justified the warrantless seizure of defendant's urine.

The additional facts that the trial court posited as necessary to a determination of exigency—*e.g.,* specific probable cause that defendant had ingested a rapidly changing controlled substance or that defendant had been diluting his urine—are not, in light of our reasoning in *McMullen,* required to support such a determination. It is sufficient that the officers had probable cause to believe that evidence of a controlled substance would be found in defendant's urine and that evidence was adduced at the suppression hearing establishing that certain controlled substances are of an "evanescent nature." It follows that this is not the "rare case" where "a warrant could have been

obtained and executed significantly faster than the actual process otherwise used under the circumstances." *Machuca II*, 347 Or at 657. (Emphasis omitted.)

Reversed and remanded.