Submitted March 20, affirmed December 26, 2013, petition for review allowed May 8, 2014 (355 Or 380)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## DINA LOUISE MAZZOLA,
*Defendant-Appellant.*

Josephine County Circuit Court
101198M; A148224

317 P3d 360

Peter Gartlan, Chief Defender, and Daniel C. Bennett, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Joanna L. Jenkins, Assistant Attorney General, filed the brief for respondent.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Duncan, Judge.

DUNCAN, J.

**DUNCAN, J.**

In this criminal case, defendant appeals the judgment convicting her of driving under the influence of intoxicants (DUII), ORS 813.010. Defendant assigns error to the trial court's denial of her motion to suppress evidence resulting from a police officer's warrantless administration of field sobriety tests (FSTs). Like the trial court, we conclude that the administration of the FSTs did not violate defendant's rights under Article I, section 9, of the Oregon Constitution[1] because it was supported by probable cause and exigent circumstances. Therefore, we affirm.

We review a trial court's denial of a defendant's motion to suppress for errors of law. *State v. Ehly*, 317 Or 66, 74-75, 854 P2d 421 (1993). We are bound by the trial court's findings of fact if there is constitutionally sufficient evidence in the record to support them. *Id.* at 75. We state the facts in accordance with that standard.

A police officer stopped defendant for two traffic violations. During the stop, the officer noticed that defendant was exhibiting signs of intoxication. The officer observed that "her speech was slurred, her eyes were glassy, [and] her eyelids were droopy," her movements were "slow and methodical," and she "appear[ed] confused about her driver's license status."

The officer concluded that he "had probable cause to believe that [defendant] was impaired." Because the officer did not smell an odor of an alcoholic beverage, he believed that defendant might be under the influence of "some other kind of controlled substance."

The officer had received police training regarding alcohol and controlled-substance impairment. In addition, he was a certified paramedic and had been for 15 years. Based on his "training and experience and common knowledge," he knew that "over time the body filters drugs and they dissipate in one's body." He also knew that "different

---

[1] Article I, section 9, provides, in relevant part, "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

drugs dissipate at different rates" and "the effects of * * * different drugs wear off at different rates."

The officer asked defendant if she would take a horizontal gaze nystagmus (HGN) test, and she agreed. In preparation for the test, the officer asked defendant if she took any medications on a regular basis. Defendant replied that she took sleeping pills and had last taken one the previous evening.

The officer administered the HGN test, which, according to the officer, revealed "no clues of impairment." The officer was not surprised by the result because, as he explained, "different medications, different controlled substances[,] have different reactions."

After the HGN test, the officer told defendant, "We're going to do a few more tests, okay?" and defendant replied, "Okay." The officer then administered three more FSTs: the walk-and-turn test, the one-leg-stand test, and the finger-to-nose test. After those tests, the officer arrested defendant for a controlled-substance DUII.

The officer did not seek a warrant before administering the FSTs. When asked whether seeking a warrant would have caused a "hardship," he responded that, with respect to FSTs, "We don't do search warrants in this County."

Before trial, defendant filed a motion to suppress, *inter alia*, the results of the FSTs that followed the HGN test. Defendant argued that (1) the FSTs were warrantless searches and (2) the FSTs violated her rights under Article I, section 9, because they were not administered pursuant to an exception to the warrant requirement. There was no dispute that the FSTs were warrantless searches. *See State v. Nagel*, 320 Or 24, 30-31, 880 P2d 451 (1994) (FSTs are searches because they require a person to perform "a series of unusual maneuvers and acts," which enable an officer "to detect certain aspects of [a] defendant's physical and psychological condition that [are] not detectable through simple observation by any member of the public or by a police officer located in a public place" (internal footnote omitted)). Thus, the issue at the hearing was whether the

FSTs were conducted pursuant to an exception to the warrant requirement.

The state argued that the FSTs were justified by two exceptions to the warrant requirement: consent and exigent circumstances. The trial court ruled that the FSTs were not justified by the consent exception; the court concluded that, after taking and passing the HGN test, defendant merely acquiesced to the officer's statement that they were going to do more tests. But, the court ruled that the FSTs were justified by the exigent-circumstances exception; the court concluded that the officer had probable cause based on the signs of intoxication he had observed and that there were exigent circumstances because defendant's intoxication would dissipate. Specifically, regarding the exigency, the court concluded that "there w[ere] exigent circumstances based on the dissipation rate of whatever the substance * * * that [defendant] had consumed to intoxicate her."

Defendant entered a conditional guilty plea, and this appeal followed. On appeal, defendant argues that, under Article I, section 9, "[t]he trial court should have granted [her] motion to suppress the results of the [FSTs] because she did not consent to those tests nor were there exigent circumstances." The state does not argue that defendant consented to the FSTs; its only argument is that there were exigent circumstances.

Under Article I, section 9, an officer can conduct a warrantless search if it is justified by probable cause and exigent circumstances. *Nagel*, 320 Or at 31-32. Exigent circumstances include those situations "that require[] the police to act swiftly to prevent danger to life or serious damage to property, or to forestall a suspect's escape or the destruction of evidence." *Id.* at 33 (quoting *State v. Stevens*, 311 Or 119, 126, 806 P2d 92 (1991)) (internal quotation marks omitted).

As the Supreme Court held in *Nagel*, alcohol intoxication dissipates, and, in some circumstances, that dissipation can justify the warrantless administration of FSTs. 320 Or at 33 (warrantless administration of FSTs was justified because "evidence of [the] defendant's intoxication may have dissipated if the officer had taken the time to leave the

roadside and obtain a warrant for the [FSTs]"); *cf. State v. Machuca*, 347 Or 644, 657, 227 P3d 729 (2010) ("[F]or purposes of the Oregon Constitution, the evanescent nature of a suspect's blood alcohol content is an exigent circumstance that will ordinarily permit a warrantless blood draw \* \* \*.").[2]

This case differs from *Nagel* in that it involves controlled-substance intoxication. But, that difference does not lead to a different result because the state presented evidence that, like alcohol intoxication, controlled-substance intoxication dissipates. As mentioned, the officer who stopped defendant testified that the effects of drugs wear off over time. Indeed, that fact is probably common knowledge. *Cf. Nagel*, 320 Or at 33 ("Blood-alcohol content is a transitory condition, the evidence of which will dissipate in a relatively short time[,]" and "the fact that blood alcohol dissipates over time is common knowledge."). In keeping with *Nagel*, we conclude that, given the evanescent nature of controlled-substance intoxication, the warrantless administration of the FSTs in this case was justified by exigent circumstances.

Admittedly, in *Nagel*, the Supreme Court held that there were exigent circumstances because "evidence of the defendant's intoxication may have dissipated *if the officer had taken the time to leave the roadside* and obtain a warrant for the [FSTs]," 320 Or at 33 (emphasis added), and, here, the state did not present any evidence that the officer would have had to leave the roadside. Indeed, the state did not present any evidence about how long it would have taken the officer to obtain a warrant. But, that is not dispositive.

---

[2] Since *Machuca*, we have decided two cases involving warrantless urine tests for controlled substances, *State v. McMullen*, 250 Or App 208, 279 P3d 367 (2012) and *State v. Fuller*, 252 Or App 245, 287 P3d 1147 (2012). In those cases, the issue was whether the rate of dissipation of drugs from the defendants' urine created an exigency. We held that, when an officer has probable cause to believe that a controlled substance will be in a suspect's urine, and *evidence is presented that at least one controlled substance will continue to change in urine,* an "exigency normally exists" to justify the warrantless administration of a urine test. *McMullen*, 250 Or App at 213-14; *see Fuller*, 252 Or App at 253-54 (quoting *McMullen*).

Here, the issue is whether the rate of dissipation of defendant's *physical, observable symptoms* of intoxication—that is, the type of evidence collected pursuant to an FST—created an exigency. Accordingly, this case is more analogous to *Nagel* and the case law governing FSTs.

In *Machuca*, the Supreme Court observed that, as a general matter, "the undisputed evanescent nature of alcohol in the blood" provides "a sufficient basis to conclude that a warrant could not have been obtained without sacrificing that evidence." 347 Or at 656 (discussing the holding in *State v. Milligan*, 304 Or 659, 748 P2d 130 (1988)). We see no reason why that rule would not also apply to cases, like this one, involving FSTs, which are designed to enable officers to detect current impairment.[3]

Affirmed.

---

[3] In *Machuca*, the Supreme Court expressed its understanding that, "particular facts may show, in the rare case, that a warrant could have been obtained and executed *significantly* faster than the actual process otherwise used under the circumstances." 347 Or at 657 (emphasis in original). Only in those "rare cases" did the court anticipate that a warrantless blood draw might be unconstitutional. *Id.* That exception to the court's general rule does not apply here.