Argued and submitted May 29, 2014, reversed and remanded October 21, 2015

STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

JAMES HENRY RAYMOND,
*Defendant-Respondent.*

Lane County Circuit Court
211118438; A151090

360 P3d 734

Matthew J. Lysne, Assistant Attorney General, argued the cause for appellant. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

David O. Ferry, Deputy Public Defender, argued the cause for respondent. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Before Duncan, Presiding Judge, and Haselton, Chief Judge, and Wollheim, Senior Judge.

HASELTON, C. J.

## HASELTON, C. J.

The state appeals an order granting defendant's pretrial motion to suppress urinalysis results, challenging, *inter alia,* the trial court's ruling that the exigency exception to the warrant requirement of Article I, section 9, of the Oregon Constitution did not excuse the warrantless procurement of a urine sample from defendant. *See* ORS 138.060(1)(c) (authorizing state to appeal pretrial order suppressing evidence). We conclude that, because the circumstances under which the urine sample was procured were exigent, there is no state law basis for suppression of the urinalysis results. Furthermore, we decline to exercise our discretion to affirm the trial court's ruling on the alternative grounds that defendant presents on appeal. Accordingly, we reverse and remand.[1]

In reviewing a trial court's order on a motion to suppress, we are bound by its express and implicit factual findings that are supported by constitutionally sufficient evidence in the record. *State v. Ehly,* 317 Or 66, 75, 854 P2d 421 (1993). Accordingly, the material facts, which are undisputed, are drawn from the parties' stipulated facts, which the trial court adopted, as well as the trial court's own findings.

At about 6:45 p.m. on August 1, 2011, Oregon State Police Trooper Bachmeier stopped defendant for failing to stop when pulling out of a Dairy Queen parking lot in Cottage Grove onto Highway 99. During the stop, defendant was "tapping his left food rapidly, grinding his teeth, and contorting his face," as well as "speaking rapidly and mumbling"—behavior Bachmeier understood to be consistent with central nervous system stimulant use. Based on those observations and defendant's subsequent poor performance

---

[1] In addition, the state assigns error to the trial court's order granting defendant's motion *in limine,* barring the drug recognition expert (DRE) officer who evaluated defendant from testifying as to the specific drug (methamphetamine) and class of drugs (central nervous system stimulant) at issue. The order further precluded the DRE officer from testifying as an expert, but permitted him to testify "as a non-scientific expert concerning his opinion regarding defendant's impairment by some substance." Because that ruling was predicated on the suppression of the urinalysis results, our disposition of the first assignment of error obviates any need to consider that matter.

on field sobriety tests (FSTs), Bachmeier concluded that defendant was impaired. Consequently, at 7:14 p.m., a half hour after initiating the stop, Bachmeier read defendant the *Miranda* warnings and placed him under arrest.

After a 15-minute ride to the Cottage Grove Police Station, Bachmeier requested a drug recognition expert (DRE) evaluation of defendant. While awaiting the DRE officer's arrival, Bachmeier gave defendant the chance to make a phone call, which defendant declined. At one point, Bachmeier informed defendant that, if he cooperated, Bachmeier would give him a ride home later. Bachmeier also read defendant the statutorily prescribed implied consent warning, informing him of the rights and consequences associated with providing or refusing to provide a breath or blood sample. *See* ORS 813.100 and ORS 813.130. Defendant agreed to an Intoxilyzer, which revealed 0.00 percent blood alcohol content.

The DRE, Trooper Sether, arrived at the station at 8:04 p.m., and proceeded with the DRE protocol, designed to detect the probable source of defendant's impairment. After completing 11 of the 12 steps of the DRE protocol, Sether concluded that defendant was under the influence of a central nervous system stimulant. Sether then asked defendant if he would consent to a urine test, the twelfth and final step of the DRE protocol. Defendant, who believed that he had to fully cooperate with the DRE evaluation in order to go home that night, replied that he "[didn't] have to pee, but I can try if that's what you want me to do." Shortly thereafter, defendant produced the urine sample. Bachmeier then drove defendant home.

The investigation, from the initiation of the traffic stop through the urine sample collection, lasted no more than three hours. Defendant, for his part, cooperated both because he had "nothing to hide" and because he thought that, "if [he] had refused [to give the urine sample,] they would have locked me up in jail." The troopers did not display their weapons, nor did they make any threats or misleading statements to defendant.[2]

---

[2] The troopers did not read the implied consent warning pertinent to urine testing, ORS 813.130; ORS 813.131; ORS 813.132, to defendant. However, as

The urine sample later tested positive for methamphetamine, and defendant was charged with driving under the influence of intoxicants (DUII), ORS 813.010. Before trial, the defense moved to suppress the urinalysis results, asserting that the warrant requirement had been violated and that no exception to that requirement applied.

As pertinent here, the defense contended that defendant's consent to the urinalysis "wasn't fully voluntary" and that "the situation was coercive" because defendant believed that, "if he cooperated[,] he would be able to go home, and get a ride home." Defendant also asserted that the exigency and search incident to arrest exceptions to the warrant requirement did not excuse the failure to seek a warrant for the urine sample under the circumstances. Those arguments were all components of defendant's general assertion that no exception to the warrant requirement was applicable. Defendant did not argue that, even if circumstances were exigent for purposes of Article I, section 9, the manner of procurement of the urine sample somehow violated some other constitutional protection.

Defendant also raised the Fourth Amendment to the United States Constitution as a ground for suppression, albeit perfunctorily. The motion to suppress simply asserted that "[a]dmission of [the urinalysis] evidence would violate Defendant's rights under * * * the Fourth Amendment to the United States Constitution," and, although the suppression memorandum quoted the Fourth Amendment and asserted that a Fourth Amendment violation had occurred, it did not advance any specific federal law arguments or authorities. Defense counsel made no federal law argument in the suppression hearing.[3]

---

noted above, prior to the Intoxilyzer, Bachmeier had read defendant the implied consent warning pertaining to breath and blood testing. Although defendant argued that that implied consent warning had a coercive effect on defendant's consent to provide a urine sample, that circumstance was not material to the trial court's ruling. *Accord State v. Moore*, 354 Or 493, 318 P3d 1133 (2013), *adh'd to as modified on recons*, 354 Or 835 (2014) (*Moore II*) (sustaining constitutionality of statutory implied consent scheme).

[3] The suppression hearing occurred before the United States Supreme Court decision in *Missouri v. McNeely*, ___ US ___, 133 S Ct 1552, 185 L Ed 2d 696 (2013), and, unsurprisingly, defendant did not develop any challenge based on the construct that the Court later announced in *McNeely*.

In opposing defendant's motion to suppress, the state argued that the search was independently justified by multiple exceptions to the warrant requirement. Specifically, the state asserted that (1) in the totality of the circumstances, defendant's consent to providing the urine sample was fully voluntary; (2) the exigent circumstances exception separately justified the search, with the exigency being the dissipation of evidence of drugs from defendant's urine; and (3) the procurement of the urine sample was also justified as a search incident to arrest.

Thus, as framed by the parties' submissions and arguments, the dispute was straightforward: The state argued that several independently sufficient exceptions to the warrant requirement applied, and defendant countered, simply, that none was applicable.[4]

At the suppression hearing, the parties stipulated

"that there are some controlled substances which have a short urine detection time. That by short detection time we mean in a [matter] of several hours, or up to 12 hours that will be eliminated from the urine sample, and therefore no longer detectible through urinalysis.

"That cocaine is a CNS, or central nervous system stimulant, and that it is one of those types of drugs, one of the several types of drugs that has a short urine detection time, which *** dissipat[es] from the urine or disappear[s] from the urine within several hours. That is the parent drug, cocaine, and that the presence of the parent drug cocaine would indicate recent consumption, and then there are metabolites in cocaine that would appear for up to several days, and so that would not indicate recent use of cocaine."

In addition, Sether testified about his experience with the warrant process for urine and blood tests, which included drafting the warrant, contacting a district attorney to review it, and contacting a judge. According to Sether, the time it took to obtain a warrant depended on the circumstances. He estimated that the average time for obtaining a telephone warrant for urine testing was about two hours,

---

[4] It was, and is, undisputed that the officers had probable cause that defendant had violated ORS 813.010.

but noted that common logistical delays, such as not being able to reach the district attorney or judge right away, could prolong things. In addition, Sether stated that transporting a suspect to a facility where the sample could be collected and conducting the first 11 steps of the DRE protocol before seeking a urine sample might prolong the time it took to actually procure one.

The trial court granted defendant's motion to suppress. In so ruling, it initially explained its reasoning as follows:

"Okay, so, given the state of the record. The testimony about [defendant] providing the urine sample, because of the indication that he would get a ride home if [he] were to cooperate is uncontroverted * * *. And because the testimony is that the dissipation of urine sample would not be so fast in this case that they couldn't get a warrant, I'm going to grant the Motion to Suppress."

In response to the state's request for clarification of its exigency reasoning, the trial court explained that "the testimony as well as the stipulated facts indicated to me that there was sufficient time to get a warrant."

After reopening the record in response to the state's motion for reconsideration, the trial court reiterated its findings and adhered to its ruling:

"Because of my conclusion regarding the conversation and [defendant's] understanding of the conversation with the troopers, I find that he didn't * * * voluntarily give consent to the search and seizure of the urine from his person.

"And I also continue to find * * * that there was not evidence to suggest that the chemical content thought to be in the urine would dissipate so quickly that there wasn't sufficient time to get a warrant."

The trial court's suppression ruling was predicated solely on state constitutional grounds, without reference to the Fourth Amendment.[5]

---

[5] The trial court's order of suppression was entered in March 2012, approximately two months before our opinion in *State v. McMullen*, 250 Or App 208, 279 P3d 367 (2012), *rev den*, 355 Or 380 (2014), which is central to our analysis that follows. *See* 274 Or App at 416-17.

On appeal, the state does not challenge the trial court's determination that defendant's consent was invalid. Instead, as pertinent to our analysis and disposition, the state contends that exigency independently and sufficiently justified the warrantless procurement of the urine sample.[6]

Defendant, as respondent, advances three principal arguments. First, defendant argues that there was no exigency in this case. Second, he alternatively contends that, notwithstanding exigency, he is entitled to exclusion of the urinalysis results because a constitutional violation occurred when the troopers obtained the sample without his legally valid consent. Third, he argues that federal law—and, particularly, the requisites of the Fourth Amendment as addressed in *Missouri v. McNeely*, ___ US ___, 133 S Ct 1552, 185 L Ed 2d 696 (2013)—provide an alternative basis on which to affirm the trial court's suppression of the urinalysis evidence.

We review the trial court's order granting suppression for legal error. *Ehly*, 317 Or at 75. Because exigent circumstances coupled with probable cause excused the failure to procure a warrant, we conclude that the trial court erred in suppressing the urinalysis results on state law grounds.

Under Article I, section 9, an officer may conduct a warrantless search if it is justified by probable cause and exigent circumstances, one of several exceptions to the warrant requirement. *State v. Nagel*, 320 Or 24, 31-32, 880 P2d 451 (1994). Exigent circumstances exist in "a situation that requires the police to act swiftly to prevent danger to life or serious damage to property, or to forestall a suspect's escape or the destruction of evidence." *State v. Stevens*, 311 Or 119, 126, 806 P2d 92 (1991). This case involves the latter, "destruction of evidence," variant of exigency, where the endangered evidence is the putative proof of controlled substances in a DUII suspect's bodily fluids.

In *State v. Machuca*, 347 Or 644, 657, 227 P3d 729 (2010) (*Machuca II*), the Supreme Court, reversing an

---

[6] The state alternatively contends that the warrantless procurement of defendant's urine was separately justified as a search incident to arrest. Given our dispositive conclusion that exigent circumstances justified the search, we need not address that contention.

en banc opinion of this court,[7] held that, when the police have probable cause to arrest for a crime involving the blood alcohol content of the suspect, "for purposes of the Oregon Constitution, the evanescent nature of a suspect's blood alcohol content is an exigent circumstance that will *ordinarily* permit a warrantless blood draw." (Emphasis added.) That construct, though broad, was not, and is not, absolute. Rather, there is no constitutionally sufficient exigency "in the rare case" in which "a warrant could have been obtained and executed *significantly* faster than the actual process otherwise used under the circumstances." *Id.* (emphasis in original).

In *State v. McMullen*, 250 Or App 208, 279 P3d 367 (2012), *rev den*, 355 Or 380 (2014), we extended the *Machuca II* construct, pertaining to blood alcohol content dissipation in the blood, to the dissipation of other controlled substances (drugs) in a DUII suspect's urine. The defendant in *McMullen* was pulled over for a traffic violation; the stop developed into an investigation and arrest for DUII. Two hours after the arrest, the police obtained a sample of the defendant's urine, which later tested positive for ecstasy, cocaine, morphine, and Oxycodone. The defendant, who was charged with DUII, sought to suppress the urinalysis results. In opposing suppression, the state adduced evidence that "cocaine itself [as opposed to its metabolite] remains detectable in urine for, on average, six hours, but it can become undetectable in as few as two hours" after consumption, and that the "average amount of time to obtain a search warrant in Washington County is five hours, but the process can take as long as a day." *Id.* at 211. The trial court—relying on our opinion in *Machuca I*—granted suppression on the ground that there was no exigency because the police could have sought a warrant before the evidence was likely to dissipate, and the state appealed. *Id.*

In the time between the trial court proceedings in *McMullen* and our consideration, the Supreme Court had issued its opinion in *Machuca II*. In the light of *Machuca II*, we held in *McMullen* that the trial court had erred in determining that there was no exigency. In so holding, we

---

[7] *State v. Machuca*, 231 Or App 232, 218 P3d 145 (2009) (en banc) (*Machuca I*).

concluded that *Machuca II*'s exigency construct, pertinent to the context of urine testing for alcohol, also applied to urine testing for all other controlled substances:

> "Once police have probable cause to believe that evidence of a controlled substance will be in a suspect's urine—a condition to which defendant here stipulated—*the exact identity of the substance is of no consequence in determining whether exigent circumstances exist.* That is so because we cannot reasonably expect police officers, even drug recognition experts, to be able to determine which controlled substance, alone or in combination, is causing a person to act in such a way as to indicate intoxication. We conclude that, because the trooper in this case had probable cause to believe that a controlled substance other than alcohol would be present in defendant's urine, and the evidence establishes *that at least one controlled substance*—cocaine—*continues to change in urine*, exigency normally exists."

*McMullen*, 250 Or App at 213-14 (emphases added);[8] *cf. State v. Mazzola*, 260 Or App 378, 317 P3d 360 (2013), *aff'd*, 356 Or 804, 345 P3d 424 (2015) (holding that warrantless administration of FSTs in nonalcohol controlled substance intoxication context was justified by the exigency exception).

In *State v. Fuller*, 252 Or App 245, 287 P3d 1147 (2012), we reiterated and amplified *McMullen*'s reasoning. The defendant in *Fuller*, who was apprehended and charged with DUII after a hit-and-run accident, had provided a urine sample to police as part of the DRE protocol. *Id.* at 246-47. The defendant sought, and obtained, suppression of the urinalysis results on the ground that his consent had been unlawfully coerced and that the search had not been justified by the exigent circumstances construct of *Machuca II*. The state appealed the order granting suppression, asserting that various exceptions to the warrant requirement justified the search.

On appeal, the defendant asserted, for the first time, that, because his consent to provide the urine sample was

---

[8] In *McMullen*, we explicitly rejected the defendant's contention that there could be no exigency if the identifiable metabolites of a rapidly dissipating drug were detectable in urine long after detectable traces of the actual drug were eliminated. 250 Or App at 214 (noting that the presence of the drug itself "indicates a more recent ingestion than the presence of * * * metabolites").

coerced,[9] the state was precluded from separately invoking exigency as justifying the seizure of the urine, and, instead, was required to demonstrate that "it would have obtained the urine sample by means other than his unlawfully coerced consent." *Id.* at 250-51. We declined to consider that contention, explaining that it did not meet the requisites of *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 660, 20 P3d 180 (2001), because the record might well have developed differently had the argument been raised and developed below. *Fuller*, 252 Or App at 251-52.

We then returned to the central issue of whether the exigency exception independently justified the warrantless procurement of the defendant's urine. We concluded that, under *McMullen*, exigent circumstances existed because there was probable cause to believe that evidence of a controlled substance would be found in the defendant's urine and because "there was evidence that at least one controlled substance—in this case, heroin—continues to change in urine." *Fuller*, 252 Or App at 254. In so holding, we emphasized that, under *McMullen*, "additional facts that the trial court posited as necessary to a determination of exigency"—such as "specific probable cause that [the] defendant had ingested a rapidly changing controlled substance or that [the] defendant had been diluting his urine"—are not required to support an exigency determination. *Id.*

The circumstances in this case, with respect to exigency, are materially indistinguishable from those in *McMullen* and *Fuller*. Here, as in both *McMullen* and *Fuller*, there was probable cause to believe that a "controlled substance other than alcohol would be present in defendant's urine," and the state adduced proof that at least one controlled substance dissipates rapidly in urine after it is consumed. Specifically, in this case, Sether believed that defendant was under the influence of a central nervous system stimulant, and the record establishes that cocaine, a central nervous system stimulant, has a "short detection time" and may be "eliminated from the urine" within "several hours or

---

[9] When *Fuller* was decided in 2012, reading a suspect the statutory implied consent warnings rendered consent invalid under existing law—*see, e.g., Machuca I* and *State v. Moore*, 247 Or App 39, 269 P3d 72 (2011) (*Moore I*)—which has since been abrogated. *See Moore II*, 354 Or 493.

up to 12 hours" of consumption. That proof established the predicate exigency.[10]

Finally, this was not the rare case in which "a warrant could have been obtained and executed *significantly* faster than the actual process otherwise used under the circumstances." *Machuca II*, 347 Or at 657 (emphasis in original). Sether, who procured the urine sample within two and a half hours of the arrest and was conducting the DRE evaluation during most of that period, estimated that it would have taken about two hours to obtain a warrant. Even giving defendant the benefit of an inference that Sether could have initiated the warrant process upon his arrival at the station, that potential half-hour advance is not "significantly faster" than the two and a half hour process that actually occurred. Accordingly, the trial court erred in concluding that the state failed to establish a constitutionally sufficient exigency for purposes of Article I, section 9.

Defendant nevertheless remonstrates that the order of suppression should be affirmed on either of two alternative rationales. First, as noted, defendant contends that, regardless of exigency, the trial court's determination that defendant had not voluntarily consented to giving the urine sample compels suppression; that is, in these circumstances, the lack of consent trumps exigency. Second, defendant urges affirmance based on the Fourth Amendment—and, specifically, on authority (*McNeely*) that did not exist at the time of the suppression hearing. Neither of those contentions was presented to the trial court—indeed, the second could not possibly have been. Accordingly—although defendant does not so style the first contention—both are functionally alternative bases for affirmance and are properly subject to the constraints of "right for the wrong reason" review as prescribed in *Outdoor Media Dimensions Inc.*, 331 Or at 659-60.

---

[10] We note that, although the (stipulated) proof in this case of the dissipation rate of cocaine in the urine is somewhat vague—*viz.*, that it begins to dissipate "several hours" after consumption and is eliminated within 12 hours—under our precedents, that dissipation timetable was legally sufficient for purposes of establishing exigency. *See Fuller*, 252 Or App at 249-50 (state's proof that heroin "has a very short life span" and that Ambien "is only detectable for up to 10 hours post ingestion" was sufficient to establish exigent dissipation under *Machuca II* and *McMullen*).

"[A]s a matter of discretion," we may affirm a lower court's ruling on an alternative basis when certain conditions are met, including if the record would "materially be the same one that would have been developed had the prevailing party raised the alternative basis for affirmance below." *Id.* For the reasons that follow, we decline to exercise discretion with respect to either alternative basis newly posited by defendant.

Defendant's first contention, as we understand it, is functionally indistinguishable from the alternative contention that we declined to address for lack of development in *Fuller. See* 274 Or App at 417-18. That is, here, as in *Fuller*, defendant posits for the first time on appeal that, regardless of exigency—which operates as an independently sufficient exception to the warrant requirement—defendant's lack of actual consent compels suppression, unless the state can establish that it would have procured the evidence through some other lawful means.[11]

That contention is qualitatively different from any raised during the suppression hearing. As noted above, 274 Or App at 412-14, the state argued that the consent, exigency, and search incident to arrest exceptions to the warrant requirement applied and that any one of those three exceptions was independently sufficient to justify the procurement of the urine; the defense countered that none of those exceptions applied; and the trial court ruled that no exception applied. The defense did *not* argue that the absence of consent, even in the presence of exigency, was dispositive. Had defendant advanced that fundamentally different theory, the record almost certainly would have developed differently. *Accord Fuller*, 252 Or App at 252 ("If the state had been aware of the argument that defendant now makes on appeal, it would have had an opportunity to establish the factual record that defendant now faults it for failing to make.").

---

[11] Defendant's proposed structural framework also resembles an argument that we rejected in *State v. Warren*, 221 Or App 514, 527, 191 P3d 722 (2008), *rev den*, 346 Or 66 (2009) ("[I]t is irrelevant whether defendant's consent was obtained illegally because, as the state argues, in light of the other justification for the search, the consent was 'superfluous.'"). However, *Warren* did not implicate the unique context of controlled substance evidence in a suspect's bodily fluids.

We note that, to the extent that defendant is now arguing that he is entitled to exclusion of the urinalysis evidence because the manner in which the search was effectuated did not comport with state constitutional exigency principles, or violated some other state constitutional protection, those qualitatively different propositions are similarly unsuitable as alternative bases for affirmance in this case. We decline to address them both because they are inadequately developed and because, had they been advanced before the trial court, the record might well have been materially different. *See generally Badrick v. Farmers Ins. Co.*, 238 Or App 320, 328, 242 P3d 685 (2010) (declining to address potential alternative basis for affirmance because the argument was not made below and was made in a "cursory" fashion on appeal).

We turn finally to defendant's other proffered alternative basis for affirmance. Invoking *McNeely*, in which the United States Supreme Court rejected any categorical presumption that the "natural metabolization of alcohol in the bloodstream presents a *per se* exigency that justifies an exception to the Fourth Amendment's warrant requirement for nonconsensual blood testing in all drunk-driving cases," ___ US at ___, 133 S Ct at 1556, defendant asserts that the circumstances under which the urine sample was obtained were not exigent under the Fourth Amendment.[12]

Whatever *McNeely*'s ultimate contours and its proper relationship to constitutionally sufficient exigency, as formulated under *Machuca II*,[13] it is apparent that the record

---

[12] Before casting federal law as a potential alternative basis for affirmance, defendant posits that we "may infer that the trial court ruled in defendant's favor under the Fourth Amendment because defendant cited that authority in his motion to suppress, and the state cited federal authority in its response." In fact, the opposite is true. Nothing in this record suggests that the trial court's ruling was predicated on federal law. The trial court did not refer to the Fourth Amendment, and, having granted suppression on state law grounds by express reference to the state law arguments advanced by the parties, the trial court had no reason to reach federal law. *Accord State v. Stoudamire*, 198 Or App 399, 108 P3d 615 (2005) (en banc) (discussing the contours of the "first things first" doctrine).

[13] *Cf. Moore II*, 354 Or at 497 n 5 ("In our view, the Court's rejection of a *per se* exigency rule [in *McNeely*] is not inconsistent with our statement in *Machuca II* that, while exigent circumstances are 'ordinarily' present in a case involving alcohol, that may not be true, depending on the facts of a particular case.").

relating to *McNeely*'s application in these circumstances has not been developed. That is, of course, unsurprising given the sequence of events, but, in this posture, prudence and the patent potential for further record development dictates a remand for the trial court to consider, in the first instance, the application of the Fourth Amendment. *See State v. Nix*, 236 Or App 32, 48, 237 P3d 842 (2010), *rev dismissed*, 350 Or 298 (2011) ("We decline to decide such substantial and complex matters on an underdeveloped record."); *State v. Stoudamire*, 198 Or App 399, 405, 108 P3d 615 (2005) (Armstrong, J., concurring) (observing that "more than 20 years of Oregon case law * * * has established that the state and federal constitutions are to be interpreted and enforced independently," requiring "independent assessment of probable cause and exigent circumstances under both bodies of law").

Reversed and remanded.